UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------X
ZINOVII BOIKO and MAMADJANOV
AZIMJON,

               Plaintiffs,

        -against-

  COASTAL AIR INC. and YUIRY IVANIN,

              Defendants.
-------------------------------------------------------X

**REPORT AND
RECOMMENDATION**
20 CV 1226 (PKC) (CLP)

**POLLAK**, Chief United States Magistrate Judge:

On March 5, 2020, plaintiffs Zinovii Boiko and Mamadjanov Azimjon (together, "plaintiffs") commenced this collective and class action[1] on behalf of themselves and all other similarly situated employees of defendants Coastal Air Inc. ("Coastal") and Yuiry Ivanin (together, "defendants"), alleging that defendants violated the Fair Labor Standards Act, 29 U.S.C. § 201 et seq. ("FLSA"), and the New York Labor Law § 650 et seq. ("NYLL"), by failing to pay minimum and overtime wages for work performed, as well as by failing to provide proper wage notices in compliance with NYLL § 195.

Presently before this Court is plaintiffs' request for damages stemming from the default of defendants Coastal and Ivanin.  For the reasons set forth below, the Court respectfully recommends that plaintiffs be awarded $19,962.00 in compensatory damages, $19,962.00 in liquidated damages, $10,000.00 in statutory damages, and $5,040.00 in attorney's fees and costs.

---

[1] In a letter to the court dated November 9, 2020, plaintiffs' counsel indicated that the plaintiffs would not be pursuing the class claims in connection with this motion for default judgment, but plaintiffs reserved the right to pursue those claims if defendants appeared and moved to vacate the default.

FACTUAL BACKGROUND

Plaintiffs allege that defendant Coastal is a domestic corporation, operating in New York State, and engaged in the HVAC industry.  (Compl.[2] ¶ 9).  According to the Complaint, Coastal is an "employer" within the meaning of the FLSA and NYLL and is an enterprise engaged in commerce or in the production of goods for commerce.  (Id.)  Plaintiffs allege that defendant Ivanin is the sole owner of Coastal and a resident of New York.  (Id. ¶ 10).

Plaintiff Boiko alleges that he was employed by Coastal as a full-time HVAC technician from September 2018 until May 2019.  (Id. ¶ 12).  He alleges that he worked five days a week, a minimum of 12 hours per day, for an average of 60 hours per week.  (Id.)  He was paid $600 a week and was not paid minimum wage or overtime for the hours worked over 40 in a week.  (Id. ¶ 13).  Plaintiff Azimjon worked for Coastal as an HVAC technician from July 2018 until May 2019, and similarly worked five days a week, 12 hours a day, for a minimum of 60 hours per week.  (Id. ¶ 14).  He claims he was not paid the required minimum wage or overtime, receiving instead a flat $600 per week.  (Id. ¶ 15).

Plaintiffs allege that defendants failed to maintain time records as required by law and deliberately misclassified plaintiffs so as to avoid paying minimum wage and overtime when plaintiffs were, in fact, nonexempt employees as defined by the Department of Labor.  (Id. ¶¶ 16-21, 26, 27).  Plaintiffs represent that they had no supervisory responsibilities, did not require any advanced or specialized knowledge, and did not make policy.  (Id. ¶¶ 16-21).

Plaintiffs bring four claims:  1) the First Claim for Relief alleges that defendants failed to pay minimum wages and overtime in violation of the FLSA (id. ¶¶ 60-64); 2) the Second Claim for Relief alleges that defendants violated NYLL § 650 and 12 N.Y.C.R.R. § 142-2.2, by failing

---

[2] Citations to "Compl." refer to plaintiffs' Complaint filed on March 5, 2020, ECF No. 1.

to pay minimum wage and overtime (id. ¶¶ 65-70); 3) the Third Claim for Relief is based on

defendants' failure to furnish accurate wages statements in violation of NYLL § 195 (id. ¶¶ 71-

75); and 4) the Fourth Claim for Relief alleges a breach of contract claim based on defendants'

failure to pay plaintiffs the agreed-upon rate of $200 a day or $1,000 a week, when in fact they

were paid on average $600 a week.[3]  (Id. ¶¶ 76-81).

PROCEDURAL BACKGROUND

Following the filing of the Complaint on March 5, 2020, plaintiffs served a copy of the

Summons and Complaint upon defendant Coastal on June 11, 2020 by service upon the

Secretary of State.  (ECF No. 8).  After several attempts at personal service, defendant Ivanin,

the sole owner of Coastal, was served on June 9, 2020, by affixing a copy of the Summons and

Complaint to the residence at 2417 Ocean Avenue, Apt. 7A, Brooklyn, N.Y. 11229, with a copy

mailed to the same address.  (ECF No. 10).  When defendants failed to file an Answer or

otherwise respond to the Complaint, the Clerk of Court entered a Certificate of Default as to both

defendants on October 19, 2020.  (ECF No. 12).  Plaintiffs then moved for default judgment on

November 5, 2020, which motion was referred to the undersigned on November 9, 2020.

DISCUSSION

I. Default Judgment

    A. Legal Standard

Rule 55 of the Federal Rules of Civil Procedure sets forth a two-step process for entry of

a default judgment.  See Enron Oil Corp. v. Diakuhara, 10 F.3d 90, 95-96 (2d Cir. 1993).  First,

the Clerk of Court enters the default pursuant to Rule 55(a) by notation of the party's default on

---

[3] In their request for default damages, plaintiffs do not seek damages under this Fourth Claim for Relief and thus, the Court has not recommended damages for this breach of contract claim.

the Clerk's record of the case.  See id.; see also Fed R. Civ. P. 55(a) (providing that "[w]hen a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend, and that failure is shown by affidavit or otherwise, the clerk must enter the party's default").  Second, after the Clerk of Court enters a default against a party, if that party fails to appear or otherwise move to set aside the default pursuant to Rule 55(c), the court may enter a default judgment.  See Fed. R. Civ. P. 55(b).  The Clerk of the Court entered a default against defendant on October 19, 2020.  To date, defendant has not moved to vacate the default judgment.

Providing guidance as to when a default judgment is appropriate, the Second Circuit has cautioned that since a default judgment is an extreme remedy, it should only be entered as a last resort.  See Meehan v. Snow, 652 F.2d 274, 277 (2d Cir. 1981).  While the Second Circuit has recognized the "push on a trial court to dispose of cases that, in disregard of the rules, are not processed expeditiously [and] . . . delay and clog its calendar," it has held that the district court must balance that interest with its responsibility to "[afford] litigants a reasonable chance to be heard."  Enron Oil Corp. v. Diakuhara, 10 F.3d at 95-96.  Thus, in light of the "oft-stated preference for resolving disputes on the merits," default judgments are "generally disfavored" and doubts should be resolved in favor of the defaulting party.  Id.  Accordingly, the plaintiff is not entitled to a default judgment as a matter of right simply because a party is in default.  See Erwin DeMarino Trucking Co. v. Jackson, 838 F. Supp. 160, 162 (S.D.N.Y. 1993) (noting that courts must "supervise default judgments with extreme care to avoid miscarriages of justice").

The Court has significant discretion to consider a number of factors in deciding whether to grant a default judgment, including (1) whether the grounds for default are clearly established; (2) whether the claims were adequately pleaded in the Complaint, thereby placing the defendant

on notice, see Fed. R. Civ. P. 54(c) (stating: "[a] default judgment must not differ in kind from, or exceed in amount, what is demanded in the pleadings"); King v. STL Consulting LLC, No. 05 CV 2719, 2006 WL 3335115, at *4-5 (E.D.N.Y. Oct. 3, 2006) (holding that Rule 54(c) is not violated in awarding damages that accrued during the pendency of a litigation, so long as the complaint put the defendant on notice that the plaintiff may seek such damages); and (3) the amount of money potentially involved. See Hirsch v. Innovation Int'l, Inc., No. 91 CV 4130, 1992 WL 316143, at *2 (S.D.N.Y. Oct. 19, 1992). The more money involved, the less justification for entering the default judgment. Id. Additionally, the Court may consider whether material issues of fact remain, whether the facts alleged in the complaint state a valid cause of action, whether plaintiff has been substantially prejudiced by the delay involved, and whether the default judgment might have a harsh effect on the defendant. See Au Bon Pain Corp. v. Artect, Inc., 653 F.2d 61, 65 (2d Cir. 1981).

1) Entry of Default Judgment Liability for Damages Alleged in Complaint

In this case, plaintiffs allege that defendants violated FLSA Sections 207(a)(1) and 215(a), 29 U.S.C. §§ 207(a)(1), 215(a), by failing to pay minimum wages and overtime rather than paying plaintiffs at the rate of one-and-a-half times the regular rate for each hour over 40 that they worked in a week. (Compl. ¶¶ 60-64). Plaintiffs also allege that defendants violated New York Labor Law not only by failing to pay plaintiffs the proper amount in minimum wages and overtime, but also by failing to notify plaintiffs of their minimum wage and overtime pay in violation of the Wage Theft Prevention Act. (Id. ¶¶ 65-70, 71-75; see also Pls.' Mem.[4] at 4). Plaintiffs seek to recover an amount equivalent to underpaid overtime wages and liquidated

---

[4] Citations to "Pls.' Mem." refer to the Plaintiffs' Memorandum of Law in Support of Motion for Default Judgment, filed November 9, 2020, ECF No. 14.

damages, pursuant to the FLSA, 29 U.S.C. § 216(b), and the NYLL, N.Y. Lab. §§ 198, 663; and

attorney's fees and costs.[3]  (Pls.' Mem. at 3-5).

a)  FLSA Claims

To establish a claim under the FLSA, plaintiffs must prove the following:  (1) the

defendant is an enterprise participating in commerce or the production of goods for the purpose

of commerce; (2) the plaintiffs are 'employees' within the meaning of the FLSA; and (3) the

employment relationship is not exempted from the FLSA.  Edwards v. Community Enterprises,

Inc., 251 F. Supp. 2d 1089, 1098 (D. Conn. 2003) (citing Tony & Susan Alamo Foundation v.

Secretary of Labor, 471 U.S. 290, 295 (1985)).

A defendant is an "[e]nterprise engaged in commerce or in the production of goods for

commerce" if the defendant is an enterprise that:

> has employees engaged in commerce or in the production of goods
> for commerce, or that has employees handling, selling, or otherwise
> working on goods or materials that have been moved in or produced
> for commerce by any person; and . . . whose annual gross volume of
> sales made or business done is not less than $500,000.

29 U.S.C. § 203(s)(1)(A).  In their Complaint, plaintiffs allege that the corporate defendant

Coastal has been and continues to be an "employer" engaged in interstate commerce and/or the

production of goods for commerce within the meaning of the FLSA.  (Compl. ¶ 9).  As for

defendant Ivanin, plaintiffs allege that he is the sole owner of Coastal.  (Id. ¶ 10).  Plaintiffs

further allege that defendants "employed" plaintiffs.  (Id. ¶ 11).

The FLSA defines an "employee" as "any individual employed by an employer."  29

U.S.C. § 203(e)(1); Edwards v. Community Enterprises, Inc., 251 F. Supp. 2d at 1098.  An

"employer" is "any person acting directly or indirectly in the interest of an employer in relation

to an employee . . . "  29 U.S.C. § 203(d).  "Person" is defined as "an individual, partnership, association, corporation, business trust, legal representative, or any organized group of persons." 29 U.S.C. § 203(a).  To "employ" means "to suffer or permit to work."  29 U.S.C. § 203(g).  The FLSA covers both "employees who in any workweek [are] engaged in commerce or in the production of goods for commerce" and those persons who are "employed in an enterprise engaged in commerce or in the production of goods for commerce . . ."  29 U.S.C. § 206(a).

Plaintiffs allege in their Complaint that both plaintiffs Boiko and Azimjon were non-exempt employees[4] working full time as HVAC technicians with no supervisory or other responsibilities that would exempt them from coverage under the FLSA.  (Compl. ¶¶ 16-21).  It follows, therefore, that for purposes of this default, they qualify as "employees" under the FLSA.

Moreover, plaintiffs allege in their Complaint that during the period of each plaintiff's employment, they were scheduled to work approximately 12 hours per day, five days a week, for approximately 60 hours a week, but they were not paid overtime for the hours worked over 40 and were consistently paid less than the minimum wage.  (Compl. ¶¶ 12, 14).

Thus, because this is a default, the Court accepts plaintiffs' uncontested allegations as true, and respectfully recommends that plaintiffs be deemed to have sufficiently set forth the necessary elements to state a claim under the FLSA.

b)  <u>NYLL Claims</u>

Plaintiffs also allege that defendants violated the NYLL.  Like the FLSA, the NYLL establishes certain minimum wage rates and mirrors the FLSA's requirement that employees be compensated at an overtime rate of one-and-one-half times their regular hourly pay for time

---

[4]<u>See</u> 29 U.S.C. § 213(a) setting forth the exemptions.

worked in excess of 40 hours in a week.  See 12 N.Y.C.R.R. § 142-2.2; see, e.g., Noble v. 93 Univ. Place Corp., 303 F. Supp. 2d 365, 376 (S.D.N.Y. 2003).

To recover under the NYLL, plaintiffs must prove that they are "employees" and that the defendant is an "employer" as defined by the statute.  See Lauria v. Heffernan, 607 F. Supp. 2d 403, 407 (E.D.N.Y. 2009).  Unlike the FLSA, the NYLL does not require that a defendant achieve a certain minimum in annual sales or business in order to be subject to the law.  See N.Y. Lab. Law § 651(6) (defining employer as "any individual, partnership, association, corporation, limited liability company, business trust, legal representative, or any organized group of persons acting as employer").  Similarly, an employee is simply defined as "any individual employed or permitted to work by an employer in any occupation . . ."  N.Y. Lab. Law § 651(5).

In this case, plaintiffs allege that defendants were "covered employer[s]" within the meaning of NYLL § 650 and 12 N.Y.C.R.R. § 142-2.2.  (Compl. ¶ 66).  Plaintiffs further allege that defendants willfully failed to pay minimum wages and overtime as prescribed by the NYLL. (Id. ¶¶ 65-70).

Finally, plaintiffs allege that the defendants never provided them with proper wage notices telling them the minimum wage and overtime requirements in violation of the Wage Theft Prevention Act, N.Y. Lab. L. § 195.  (Id. ¶¶ 71-75).  Thus, they have adequately stated a claim under this provision as well.

Accordingly, based on these uncontested allegations, the Court respectfully recommends that plaintiffs be deemed to have adequately alleged the elements necessary to state claims under the New York Labor Law.

2)   Default Determination

Based upon a review of the allegations in the Complaint, which are undisputed at this time, the Court finds that plaintiffs have sufficiently established liability as to warrant entry of a default judgment for the requested damages.  See 29 U.S.C. § 207(a)(1); 12 N.Y.C.R.R. § 142-2.4; see also FTC Credit Practices Rule, 29 C.F.R. § 778.205 (2011) (regarding bonus time).

Here, it is beyond dispute that defendants are in default.  Despite proper service defendants have failed to answer or otherwise respond to the Complaint and they have not appeared in this action.  Moreover, the corporate defendant has failed to obtain counsel. The failure by the corporate defendant to obtain counsel in this case constitutes a failure to defend because the corporate defendant, as a corporation, cannot proceed in federal court *pro se*.  See Shapiro, Bernstein & Co. v. Cont'l Record Co., 386 F.2d 426, 427 (2d Cir. 1967) (per curiam) (stating that "it is settled law that a corporation cannot appear other than by its attorney"); see also Jones v. Niagara Frontier Transp. Auth., 722 F.2d 20, 22 (2d Cir. 1983) (discussing the rationale for requiring corporations, as "artificial" entities, to appear through counsel only). Defendants also failed to respond to plaintiffs' request that default be entered, see Hirsch v. Innovation Int'l, Inc., 1992 WL 316143, at *2 (holding that "[defendant's] default is crystal clear – it does not even oppose this motion") and they did not submit papers in response to plaintiffs' motion for default judgment. Thus, plaintiffs' evidence on damages is undisputed.  Additionally, the amount of money involved in this case is not significant, unlike a case in which there are potentially millions of dollars involved.  See id. (entering default but giving defendant 20 days to set aside the default because plaintiff's damages request ran well into the millions of dollars).

Given the numerous opportunities afforded to defendants, and their apparent lack of interest in participating in these proceedings, the Court finds no compelling reason to delay

further. Accordingly, it is respectfully recommended that default judgment be entered against defendants Coastal and Ivanin.

## II. Damages

### A. Legal Standard

When a default judgment is entered, the defendants are deemed to have admitted all well-pleaded allegations in the Complaint pertaining to liability. See Greyhound Exhibitgroup, Inc. v. E.L.U.L. Realty Corp., 973 F.2d at 158; Montcalm Publ'g Corp. v. Ryan, 807 F. Supp. 975, 977 (S.D.N.Y. 1992) (citing United States v. Di Mucci, 879 F.2d 1488, 1497 (7th Cir. 1989)); Au Bon Pain Corp. v. Artect, Inc., 653 F.2d at 65; Deshmukh v. Cook, 630 F. Supp. 956, 959-60 (S.D.N.Y. 1986); 6 Moore's Federal Practice ¶ 55.03[2] at 55-16 (2d ed. 1988). However, the plaintiffs must still prove damages in an evidentiary proceeding at which the defendants have the opportunity to contest the claimed damages. See Greyhound Exhibitgroup, Inc. v. E.L.U.L. Realty Corp., 973 F.2d at 158. "'While a default judgment constitutes an admission of liability, the quantum of damages remains to be established by proof unless the amount is liquidated or susceptible of mathematical computation.'" Levesque v. Kelly Communications, Inc., No. 91 CV 7045, 1993 WL 22113, at *4 (S.D.N.Y. Jan. 25, 1993) (quoting Flaks v. Koegel, 504 F.2d 702, 707 (2d Cir. 1974)).

When a court enters a default judgment and the amount of damages sought does not consist of a sum certain, Rule 55(b) of the Federal Rules of Civil Procedure provides that: "The Court may conduct hearings or make referrals – preserving any federal statutory right to a jury trial – when, to enter or effectuate judgment, it needs to . . . determine the amount of damages." Fed. R. Civ. P. 55(b)(2)(B). While "the court must ensure that there is a basis for the damages specified in a default judgment, it may, but need not, make the determination through a hearing."

Fustok v. Conticommodity Servs., Inc., 122 F.R.D. 151, 156 (S.D.N.Y. 1988) (collecting cases), aff'd, 873 F.2d 38 (2d Cir. 1989).

      B.   Damages Requested by Plaintiffs

          1)  Burden of Proving FLSA Damages

Under the FLSA, an employee-plaintiff generally "has the burden of proving that he performed work for which he was not properly compensated." Santillan v. Henao, 822 F. Supp. 2d 284, 293-94 (E.D.N.Y. 2011) (quoting Anderson v. Mt. Clemens Pottery Co., 328 U.S. 680, 687 (1946), superseded on other grounds by 29 U.S.C. § 251, et seq).  The Supreme Court in Anderson v. Mt. Clemens Pottery Co. noted, however, that "employees seldom keep . . . records [of hours worked] themselves; even if they do, the records may be and frequently are untrustworthy."  328 U.S. at 687.  By defaulting, defendants have "deprived the plaintiff of the necessary employee records required by the FLSA, thus hampering plaintiff's ability to prove his damages."  Santillan v. Henao, 822 F. Supp. 2d at 294.  The Supreme Court has held that "an employee has carried out his burden if he proves that he has in fact performed work for which he was improperly compensated and if he produces sufficient evidence to show the amount and extent of that work as a matter of just and reasonable inference."  Tran v. Alphonse Hotel Corp., 281 F.3d 23, 31 (2d Cir. 2002) (quoting Anderson v. Mt. Clemens Pottery Co., 328 U.S. at 687), overruled on other grounds, Slayton v. American Express Co., 460 F.3d 216 (2d Cir. 2006).

In light of this holding, courts in this circuit have concluded that where a defendant-employer defaults, a plaintiff may meet this burden of proof "by relying on his recollection alone."  Doo Nam Yang v. ACBL Corp., 427 F. Supp. 2d 327, 335 (S.D.N.Y. 2005).  Otherwise, defendants in FLSA cases would stand to benefit from choosing not to cooperate with discovery or litigation efforts, and "[o]ne should not be permitted to profit by its own wrongful act."  Boyke v. Superior Credit Corp., No. 01 CV 0290, 2006 WL 3833544, at *5 (N.D.N.Y. Dec. 28,

2006) (citing 29 U.S.C. § 211(c), which requires that an employer "make, keep, and preserve . . . records of the persons employed by him and of the wages, hours, and other conditions and practices of employment"); see also Park v. Seoul Broad. Sys. Co., No. 05 CV 8956, 2008 WL 619034, at *7 (S.D.N.Y. Mar. 6, 2008) (holding that courts should apply a "special burden-shifting standard" where employers fail to comply with this statutory duty of record keeping).

    2)  Burden of Proving NYLL Damages

    New York law also requires that employers keep various, detailed employment records. Like the FLSA, the NYLL requires that employers maintain employment records relating to employees' rates of pay, hours, and dates of work, among other information.  See, e.g., N.Y. Lab. L. § 195(1)(a) (requiring an employer to "provide his or her employees, in writing . . . a notice containing . . . the rate or rates of pay thereof, whether paid by the hour, shift, day, week, salary, piece, commission, or other allowances"); N.Y. Lab. L. § 195(2) (requiring employers to notify employees prior to changing the day on which wages are paid); N.Y. Lab. L. § 195(3) (employers must "furnish each employee with a statement with every payment of wages, listing . . . the dates of work . . . gross wages; deductions; allowances, if any claimed as part of the minimum wage; and net wages"); N.Y. Lab. L. § 195(4) (requiring employers to "establish, maintain[,] and preserve for not less than three years payroll records showing the hours worked, gross wages, deductions and net wages for each employee").  Thus, where the defendant has failed to maintain proper records, the burden of proving that plaintiff was paid properly falls on the employer, upon whom the statute imposes a duty to maintain such information.  See Marin v. JMP Restoration Corp., No. 09 CV 1384, 2012 WL 4369748, at *6 (E.D.N.Y. Aug. 24, 2012) (explaining that "[t]o determine NYLL overtime damages, courts use the same burden-shifting scheme employed in FLSA actions").

Thus, under both federal and state laws, defendant-employers have an obligation to keep records, and by virtue of defendants' default, plaintiff's "recollection and estimates of hours worked are presumed to be correct." Liu v. Jen Chu Fashion Corp., No. 00 CV 4221, 2004 WL 33412, at *3 (S.D.N.Y. Jan. 7, 2004); accord Chao v. Vidtape, 196 F. Supp. 2d 281, 293-94 (E.D.N.Y. 2002). Courts have applied this same presumption of correctness to a plaintiff's recollection of wages earned. See, e.g., Gunawan v. Sake Sushi Rest., 897 F. Supp. 2d at 84.

Here, defendants did not appear and therefore cannot meet their burden by providing the records they are required to maintain. Indeed, in the Complaint, plaintiffs allege that defendants failed to maintain records of plaintiffs' hours worked. (Compl. ¶ 27). Thus, even if defendants had not defaulted, the only evidence available to support plaintiffs' claims is plaintiffs' own statements in their Declarations. Given that defendants have not appeared in this action to challenge plaintiffs' claims, the Court bases its recommendation on plaintiffs' evidence as to hours worked and wages paid by defendants.

### 3) Minimum Wage Claims

An employer who fails to meet minimum wage obligations under the FLSA and the NYLL "shall be liable to the employee or employees affected in the amount of their unpaid minimum wages . . . and in an additional equal amount as liquidated damages." 29 U.S.C. § 216(b); see 12 N.Y.C.R.R. § 143-1.3.

Under the NYLL, for small employers – those employers with ten or less employees – in New York City, the applicable minimum hourly wage rates for the time periods at issue in this matter were as follows: (1) on or after December 31, 2017, the rate was $12.00 per hour; 2) on or after December 31, 2018, the minimum wage rate was $13.50 per hour; and (3) on and after December 31, 2019, the minimum wage rate was $15.00 per hour. N.Y. Lab. L. § 652(1)(a)(ii).

Under the FLSA, the applicable minimum hourly wage rate was $7.25 from July 24, 2009 onward.  29 U.S.C. § 206(a)(1)(C).

Both statutes specify that, where the other prescribes a higher minimum wage rate, the statute containing the higher wage rate shall control.  See 29 U.S.C. § 218(a); N.Y. Lab. L. § 652(1).  In this case, the wage rates provided by the NYLL were higher throughout plaintiffs' employment; thus, the Court uses the rates prescribed under the NYLL as the applicable minimum wage rate for each relevant period.

Plaintiffs seek unpaid minimum wages under both the FLSA and NYLL.  (See Compl. ¶¶ 60-70).  Plaintiffs also seek overtime pay pursuant to both the FLSA and the NYLL.  (Id.)

1)  Minimum Wages Under the FLSA and NYLL

Plaintiffs seek unpaid minimum wages under both the FLSA and NYLL.  (See Compl. ¶¶ 60-70).  According to the affidavits submitted in support of plaintiffs' motion for default judgment, Mr. Boiko worked on average 64 hours per week for 17 weeks in 2018 for which he was paid $10,310.00.  Not considering overtime wages, which are addressed below, Mr. Boiko should have received $13,056.00 in minimum wages for the 64 hours per week he worked each week.  For the 18 weeks that Mr. Boiko worked in 2019, he was paid $11,500.00.  He claims that during this time, he worked on average 64 hours per week, so for the 18 weeks worked during 2019, Mr. Boiko should have received minimum wages for that period of $15,552.00.  Thus, Mr. Boiko was underpaid by $6,798.00 in minimum wages during his employment.[5]

_____

[5] For the year 2018, Mr. Boiko should have been paid $12.00 per hour x 64 hours per week x 17 weeks = $13,056. For the year 2019, he should have been paid $13.50 per hour x 64 hours per week x 18 weeks = $15,552.  In total, that equals $28,608.00.  However, he was only paid a total of $21,810, and therefore is owed $6,798.00 in minimum wages alone.

Similarly, Mr. Azimjon was underpaid in terms of minimum wages. He claims he worked 60 hours per week for 25 weeks in 2018 for which he was paid $600.00 per week, instead of the $720.00 per week, which would have been the correct amount in minimum wages due for 60 hours of work. He also claims that for the 60 hours per week he worked in 2019, he was only paid $600.00 per week, instead of $810.00 per week, which was the amount owed in minimum wages in 2019. Had he been paid properly, Mr. Azimjon should have received a total of $18,000.00 for the hours worked in 2018, and $14,580.00 for the hours worked in 2019. Instead, he received $17,580.00 in 2018 and $12,630.00 in 2019. Subtracting the amount paid from the amounts owed, Mr. Azimjon was underpaid a total of $2,370.00 just in minimum wages.[6]

Accordingly, based on the documents presented to this Court and the representation of the individual plaintiffs as to the hours worked and the amounts paid, which has not been challenged by defendants, the Court respectfully recommends that plaintiff Boiko be awarded $6,798.00 in unpaid minimum wages and plaintiff Azimjon be awarded $2,370.00 in unpaid minimum wages.

2) <u>Overtime Pay Under the FLSA and the NYLL</u>

Plaintiffs also seek overtime pay pursuant to both the FLSA and the NYLL. (<u>See</u> Compl.

---

[6] For the year 2018, Mr. Azimjon should have been paid $12.00 per hour x 60 hours per week x 25 weeks = $18,000.00. For the year 2019, he should have been paid $13.50 per hour x 60 hours per week x 18 weeks = $14,580.00. In total, that equals $32,580.00. He was paid $17,580.00 in 2018 and $12,630.00 in 2019, and is therefore owed $2,370.00.

¶¶ 60-70).[1]  Under both the FLSA and NYLL, an employee is entitled to overtime pay,

calculated at one-and-one-half times the employee's regular hourly rate, for hours worked in

excess of 40 in one work week.  See 29 U.S.C. § 207(a); 12 NYCRR § 142.2-2.  The method for

calculating overtime under both the FLSA and NYLL is the same.  Even if the plaintiffs are

owed overtime wages in violation of both the FLSA and the NYLL, they are not entitled to

recover double damages.  See Janus v. Regalis Constr., Inc., No. 11 CV 5788, 2012 WL

3878113, at *7 (E.D.N.Y. July 23, 2012), report and recommendation adopted, 2012 WL

3877963 (E.D.N.Y. Sept. 4, 2012).

New York law requires that employees be compensated at one-and-a-half times the

employee's regular rate of pay for overtime pay.  See 12 NYCRR § 142.2-2; Nakahata v. New

York–Presbyterian Healthcare Sys., Inc., 723 F.3d 192, 200 (2d Cir. 2013).  Mr. Boiko

represents that he worked 64 hours per week, or the equivalent of 24 hours of overtime each

week for 17 weeks in 2018.  Thus, using the minimum wage rate of $12.00 per hour, he is owed

an additional $6.00 an hour for each of those 24 hours or $144.00 per week in overtime ($6.00 x

24 = $144.00 per week).  Since he worked 17 weeks in 2018, he is owed $2,448.00 in overtime

for that period ($144.00 per week x 17 weeks = $2,448.00).  In 2019, when the minimum wage

was $13.50 an hour, he should have received an additional $6.75 for every hour worked over 40

hours, meaning that for his 24 hours of overtime, in addition to any underpayment of minimum

wages, he was underpaid overtime on a weekly basis by $162.00 ($6.75 x 24 = $162.00 per

---

[7] See N.Y. Lab. L. § 198(1-a) (providing that an employee may recover "an additional
amount as liquidated damages equal to one hundred percent of the total amount of the *wages
found to be due*") (emphasis added); Tan v. Voyage Express, Inc., No. 15 CV 6202, 2017 WL
2334969, at *6-7 (E.D.N.Y. May 25, 2017) (excluding damages under the WTPA for wage
notice violations from the liquidated damages calculation); Santana v. Latino Express Rests.,
Inc., 198 F. Supp. 3d 285, 294-95 (S.D.N.Y. 2016) (same).

week), in addition to the minimum wage amounts he was owed.  Since he worked 18 weeks during 2019, he should have received a $2,916.00 in overtime pay during 2019 ($162.00 per week x 18 weeks = $2,916.00).  Thus, in total, Mr. Boiko is owed $5,364.00 in unpaid overtime wages.

Mr. Azimjon, who worked 20 hours of overtime each week, is owed overtime at the rate of an additional $120.00 per week in 2018 and an additional $135.00 per week in 2019.  Since Mr. Azimjon worked 25 weeks in 2018, he is owed overtime in the amount of $3,000.00 ($120.00 per week x 25 weeks).  For the 18 weeks that he worked in 2019, Mr. Azimjon is owed $2,430.00 ($135.00 per week x 18 weeks).  In total, Mr. Azimjon is owed $5,430.00 in unpaid overtime wages.

Having reviewed the plaintiffs' submissions, the Court respectfully recommends that plaintiff Boiko be awarded a total of $12,162.00 in unpaid minimum wages and overtime and that plaintiff Azimjon be awarded a total of $7,800.00 in unpaid minimum wages and overtime.

### 4) Required Notifications Under the NYLL

Plaintiffs also seek damages due to defendants' alleged failure to furnish accurate wage statements and their failure to provide notice to employees of any change in their rate of pay in violation of NYLL § 195.  (Compl. ¶¶ 71-75).  Section 195(3) requires that every employer provide to his or her employees "a statement with every payment of wages," listing various information including the dates of work covered by the payment, information identifying the employer and employee, details regarding the rate of pay and the overtime rate of pay, and the number of hours worked.  N.Y. Lab. L. § 195(3).  In addition, an employee can recover $250.00 for each workday that the employer was in violation of Section 195(3), up to a statutory maximum of $5,000.00.  See N.Y. Lab. L. § 198(1-d).  Since both plaintiffs worked for more

17

than the minimum number days required, they are both entitled to receive an additional $5,000, representing a penalty for defendants' violation of this section.

### 5) Liquidated Damages Under the FLSA and NYLL

In addition to compensatory damages, plaintiffs seek liquidated damages pursuant to both federal and state law.  See 29 U.S.C. § 216(b); N.Y. Lab. L. § 663(1).  Under the FLSA, an employer who fails to pay his or her employees the minimum wage or overtime compensation required by Sections 206 and 207 is "liable to the employee . . . affected in the amount of [his or her] unpaid minimum wages, or [his or her] unpaid overtime compensation . . . and in an additional equal amount as liquidated damages," 29 U.S.C. § 216(b), unless the employer can demonstrate that he or she acted in good faith and had reasonable grounds for believing that the act or omission in proper payment was not a violation of the FLSA.  Jemine v. Dennis, 901 F. Supp. 2d 365, 388 (E.D.N.Y. 2012) (citing 29 U.S.C. §§ 216(b), 260).  This award serves as "compensation to the employee occasioned by the delay in receiving wages caused by the employer's violation of the FLSA."  Id. (quoting Herman v. RSR Secs. Servs., Ltd., 172 F. 3d 132, 141-42 (2d Cir. 1999)).  Defendants have defaulted and therefore have not met their statutory burden of demonstrating that they acted in good faith in failing to pay overtime to plaintiffs; thus, the Court finds that plaintiffs are entitled to an award of liquidated damages under the FLSA.

Similarly, under the NYLL, an employee is entitled to receive liquidated damages "equal to one hundred percent of the total amount of the wages found to be due," unless the employer provides a good faith basis for believing he or she was in compliance with the law.  N.Y. Lab. L. §§ 198(1-a), 663(1); Xochimitl v. Pita Grill of Hell's Kitchen, Inc., No. 14 CV 10234, 2016 WL 4704917, at *15 (S.D.N.Y. Sept. 8, 2016) (citing Gold v. N.Y. Life Ins. Co., 730 F.3d 137, 144

(2d Cir. 2013) (holding that, "[a]s of November 24, 2009, an employee was entitled to NYLL liquidated damages 'unless the employer proves a good faith basis for believing that its underpayment of wages was in compliance with the law'")).  In the absence of proof of a good faith basis, plaintiffs are entitled to recover liquidated damages "equal to one hundred percent of the total of such underpayments found to be due." Gold v. N.Y. Life Ins. Co., 730 F.3d at 144 (holding that the amendments to the NYLL that went into effect on April 9, 2011, raising the amount of liquidated damages recoverable under the statute, could not be applied retroactively); see also N.Y. Lab. L. § 663(1).

Although the Court finds that plaintiffs may be entitled to an award of liquidated damages under both the NYLL and the FLSA, the Court respectfully recommends that plaintiffs not be awarded cumulative liquidated damages for any overlapping claims for the three-year period covered by FLSA.  The 2010 amendments to the NYLL resulted in a state statute that is, in all material respects, identical to the FLSA, and an award of liquidated damages under one satisfies the provision for liquidated damages under the other.  See Chowdhury v. Hamza Express Food Corp., 666 Fed. App'x 59, 61 (2d Cir. 2016) (analyzing the effects of the amendments to the NYLL); see also Pest v. Bridal Works of New York, Inc., No. 16 CV 1523, 2017 WL 3393967, at *16 (E.D.N.Y. July 27, 2017) (collecting cases).

Accordingly, because the law is clear that plaintiffs "may recover under the statute which provides the greatest amount of damages," Charvac v. M & T Project Managers of New York, Inc., No. 12 CV 05637, 2015 WL 5475531, at *4 (E.D.N.Y. June 17, 2015) (quoting Jiao v. Shi Ya Chen, No. 03 CV 0165, 2007 WL 4944767, at *17 (S.D.N.Y. Mar. 30, 2007)), report and recommendation adopted as modified, No. 12 CV 5637, 2015 WL 5518348 (E.D.N.Y. Sept. 17, 2015); Wicaksono v. XYZ 48 Corp., No. 10 CV 3635, 2011 WL 2022644, at *3 (S.D.N.Y. May

2, 2011) (holding that where plaintiffs have prevailed under both state and federal law, "the law providing the greatest recovery will govern"), report and recommendation adopted, 2011 WL 2038973 (S.D.N.Y. May 24, 2011)); Maldonado v. La Nueva Rampa, Inc., No. 10 CV 8195, 2012 WL 1669341, at *5 (S.D.N.Y. May 14, 2012), the Court respectfully recommends that plaintiffs be awarded liquidated damages pursuant to the NYLL.  The NYLL provides the greater recovery for the plaintiffs because it allows them to recover liquidated damages for all wage claims (but not wage notice claims)[7] brought under the NYLL, and, unlike the FLSA, the NYLL allows for the recovery of both liquidated damages and pre-judgment interest.  Reilly v. Natwest Mkts. Grp. Inc., 181 F.3d 253, 265 (2d Cir. 1999).

As described above, plaintiff Boiko is owed a total of $12,162.00 in unpaid minimum wages and overtime compensation; plaintiff Azimjon is owed a total of $7,800.00 in unpaid minimum wages and overtime.  Accordingly, the Court respectfully recommends that plaintiff Boiko be awarded liquidated damages in the amount of $12,162.00 and plaintiff Azimjon receive $7,800.00 in liquidated damages.

6)  Attorney's Fees and Costs

Plaintiffs also seek to recover an award of "reasonable attorney's fees and costs" (see Compl. at (I); Feinerman Aff.[8] ¶ 6), pursuant to the applicable provisions of the FLSA and the NYLL.  See 29 U.S.C. § 216(b); N.Y. Lab. L. § 663(1).  In accordance with the requirements

---

[7] See N.Y. Lab. L. § 198(1-a) (providing that an employee may recover "an additional amount as liquidated damages equal to one hundred percent of the total amount of the *wages found to be due*") (emphasis added); Tan v. Voyage Express, Inc., No. 15 CV 6202, 2017 WL 2334969, at *6-7 (E.D.N.Y. May 25, 2017) (excluding damages under the WTPA for wage notice violations from the liquidated damages calculation); Santana v. Latino Express Rests., Inc., 198 F. Supp. 3d 285, 294-95 (S.D.N.Y. 2016) (same).

[8] Citations to "Feinerman Aff." refer to the Affirmation of David A. Feinerman, Esq. in Support of Motion for Default Judgment, dated October 28, 2020.

established by the Second Circuit, see, e.g., Marion S. Mishkin Law Office v. Lopalo, 767 F.3d

144, 148 (2d Cir. 2014); N.Y. State Association for Retarded Children, Inc. v. Carey, 711 F.2d

1136, 1148 (2d Cir. 1983), plaintiffs' counsel has submitted an Affirmation, along with

contemporaneous billing records, setting forth the dates and amount of time during which

services were rendered, the hourly rate at which the services were charged, along with the name

of the attorney performing the work and a description of the services rendered. (See Feinerman

Aff., Ex. D). Plaintiffs' counsel has not submitted any costs associated with this matter.

     a) Attorney's Fees

Courts employ the "lodestar" method in calculating reasonable attorney's fees,

multiplying the number of hours reasonably spent by counsel on the matter by a reasonable

hourly rate. See, e.g., Perdue v. Kenny A., 559 U.S. 542, 546, 551-52 (2010); Millea v. Metro-

North R.R. Co., 658 F.3d 154, 166 (2d Cir. 2011); Arbor Hill Concerned Citizens Neighborhood

Ass'n v. County of Albany, 522 F.3d 182, 183 (2d Cir. 2008). Although there is a "strong

presumption that this amount represents a reasonable fee," the resulting lodestar figure may be

adjusted based on certain other factors. Quaratino v. Tiffany & Co., 166 F.3d 422, 425 (2d Cir.

1999).

     b) Reasonable Hourly Rate

In assessing whether legal fees are reasonable, the Court must determine the

"presumptively reasonable fee" for an attorney's services by looking to what a reasonable client

would be willing to pay. See Arbor Hill Concerned Citizens Neighborhood Ass'n v. County of

Albany, 522 F.3d at 183. To calculate the presumptively reasonable fee, a court must first

determine a reasonable hourly rate for the legal services performed. Id. In Arbor Hill, the

Second Circuit set forth the following factors to guide a court's inquiry into what constitutes a

reasonable hourly rate:

> 1) the time and labor required; 2) the novelty and difficulty of the questions; 3) the level of skill required to perform the legal service properly; 4) the preclusion of employment by the attorney due to acceptance of the case; 5) the attorney's customary hourly rate; 6) whether the fee is fixed or contingent; 7) the time limitations imposed by the client or the circumstances; 8) the amount involved in the case and the results obtained; 9) the experience, reputation, and ability of the attorneys; 10) the "undesirability" of the case; 11) the nature and length of the professional relationship with the client; and 12) awards in similar cases[.]

Id. at 187 n. 3 (citation omitted).  A number of courts within the Second Circuit have applied these factors when awarding attorney's fees.  See, e.g., Manzo v. Sovereign Motor Cars, Ltd., No. 08 CV 1229, 2010 WL 1930237, at *7 (E.D.N.Y. May 11, 2010); Adorno v. Port Auth. of New York & New Jersey, 685 F. Supp. 2d 507, 511 (S.D.N.Y. 2010); Cruz v. Henry Modell & Co., Inc., No. 05 CV 1450, 2008 WL 905351, at *3 (E.D.N.Y. Mar. 31, 2008).

Courts are also instructed to balance:

> the complexity and difficulty of the case, the available expertise and capacity of the client's other counsel (if any), the resources required to prosecute the case effectively . . . , the timing demands of the case, whether the attorney might have an interest (independent of that of his client) in achieving the ends of the litigation or might initiate the representation himself, whether the attorney might have initially acted pro bono . . . , and other returns (such as reputation, etc.) the attorney might expect from the representation[.]

Arbor Hill Concerned Citizens Neighborhood Ass'n v. County of Albany, 522 F.3d at 184; see also Heng Chan v. Sung Yue Tung Corp., No. 03 CV 6048, 2007 WL 1373118, at *2 (S.D.N.Y. May 8, 2007).  In awarding attorney's fees, the Court is guided by the fact that default actions are relatively simple legal matters, but also considers each attorney's degree of skill and the Court's own experience dealing with similar claims.

In this case, plaintiffs were represented by David A. Feinerman, Esq., for whom plaintiffs

seek an hourly rate of either $350.00.  (Feinerman Aff. ¶ 8).  According to Mr. Feinerman's

Affirmation, he has practiced law for over 30 years and has "ample experience" in FLSA and

NYLL claims.  (Id. ¶ 7).

Based on the Court's knowledge of the rates generally charged in this district for this type

of work in connection with FLSA and NYLL cases, the Court finds that the rate of $350.00 per

hour for Mr. Feinerman's work to be well within the range of the rates ordinarily awarded to

partners in this district, which range from $300 to $450 per hour for partners.  See, e.g., Saucedo

v. On the Spot Audio Corp., No. 16 CV 00451, 2016 WL 8376837, at *18 (E.D.N.Y. Dec. 21,

2016), report and recommendation adopted, 2017 WL 780799 (E.D.N.Y. Feb. 28, 2017); Cortes

v. Warb Corp., No. 14 CV 7562, 2016 WL 1266596, at *6 (E.D.N.Y. Mar. 15, 2016), report and

recommendation adopted, 2016 WL 1258484 (E.D.N.Y. Mar. 30, 2016) (observing that,

"[w]ithin this District, the following rates have been endorsed as reasonable: $300.00–$450.00

for partners, $200.00[–]$300.00 for senior associates, and $100.00[–]$200.00 for junior

associates").

Given the prevailing rates in this District, the Court finds that a reasonable rate for Mr.

Feinerman's work is $350.00 per hour.

c)  Reasonable Number of Hours

The next step in awarding attorney's fees is determining the reasonableness of the

number of hours expended by counsel.  See, e.g., LaBarbera v. Empire State Trucking, Inc., No.

07 CV 669, 2008 WL 746490, at *4-5 (E.D.N.Y. Feb. 26, 2007).  In reviewing a fee application,

the court "should exclude excessive, redundant or otherwise unnecessary hours."  Bliven v.

Hunt, 579 F.3d 204, 213 (2d Cir. 2009) (quoting Hensley v. Eckerhart, 461 U.S. 424, 433-35,

440 (1983)).  The court should examine each entry "with a view to the value of the work product

of the specific expenditures to the client's case." Luciano v. Olsten Corp., 109 F.3d 111, 116 (2d Cir. 1997). If the court finds "that some of the time was not reasonably necessary . . . it should reduce the time for which compensation is awarded accordingly." Louis Vuitton Malletier, S.A. v. LY USA, Inc., 676 F.3d 83, 111 (2d Cir. 2012); see also Struthers v. City of New York, No. 12 CV 242, 2013 WL 5407221, at *8-9 (E.D.N.Y. Sept. 25, 2013) (reducing fees because the fees requested for responding to motion papers were "excessive"); Jemine v. Dennis, 901 F. Supp. 2d 365, 393 (E.D.N.Y. 2012) (reducing requested fees by 10% because the "quality and complexity of the submissions and calculations" did not reflect the hours expended); Ehrlich v. Royal Oak Fin. Servs., No. 12 CV 3551, 2012 WL 5438942, at *3-4 (E.D.N.Y. Nov. 7, 2012) (reducing attorney's fees because the attorney's litigation of the suit made apparent his "lack of experience" and for duplicative entries); Quinn v. Nassau County Police Dep't, 75 F. Supp. 2d 74, 78 (E.D.N.Y. 1999) (reducing one attorney's fees by 20% and another's by 30% for unnecessary and redundant time); American Lung Ass'n v. Reilly, 144 F.R.D. 622, 627 (E.D.N.Y. 1992) (finding that the "use of so many lawyers for relatively straightforward legal tasks was excessive and led to duplication of work," and reducing plaintiffs' lawyer's hours by 40%).

As noted above, Mr. Feinerman has submitted contemporaneous billing records, setting forth the dates and amount of time during which services were rendered, the hourly rate at which the services were charged, and a description of services performed. In total, Mr. Feinerman billed 14.4 hours of work. (Feinerman Aff., Ex. D). Having reviewed the entries on plaintiff's billing time sheet, the Court finds that the number of hours billed is reasonable.

Accordingly, the Court respectfully recommends that plaintiffs be awarded $5,040.00 in attorney's fees.

<u>CONCLUSION</u>

In total, then, the Court respectfully recommends that a default judgment enter against the defendants for a total of $49,924.00 in damages, which includes $5,000.00 to each plaintiff for notice violations, $12,162.00 in overtime and minimum wage payments to plaintiff Boiko, $7,800.00 in the same to plaintiff Azimjon, $12,162.00 in liquidated damages to plaintiff Boiko, and $7,800.00 in liquidated damages to plaintiff Azimjon.  Although plaintiffs' counsel included a retainer agreement noting that he would receive fees equal to 33% of the monetary award received by plaintiffs, the Court respectfully recommends granting attorney's fees on the lodestar basis and granting a total of $5,040.00 in fees.  As such, the Court recommends awarding a total of $54,964.00 in damages and attorney's fees and costs.

Any objections to this Report and Recommendation must be filed with the Clerk of the Court within fourteen (14) days.  <u>See</u> 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b)(2); <u>see also</u> Fed. R. Civ. P. 6(a), (e) (providing the method for computing time).  Failure to file objections within the specified time waives the right to appeal the District Court's order.  <u>See, e.g.</u>, <u>Caidor v. Onondaga Cty.</u>, 517 F.3d 601, 604 (2d Cir. 2008) (explaining that "failure to object timely to a . . . report [and recommendation] operates as a waiver of any further judicial review of the magistrate [judge's] decision").

The Clerk is directed to send copies of this Report and Recommendation to the parties either electronically through the Electronic Case Filing (ECF) system or by mail.

**SO ORDERED.**

Dated:  Brooklyn, New York
        August 4, 2021

                                    /s/ Cheryl L. Pollak
                                    Cheryl L. Pollak
                                    Chief United States Magistrate Judge
                                    Eastern District of New York

25